UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
DAVID R. NICHOLS,                                    Chapter 13
        DEBTOR.                              Case No. 10-12211-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matters before the Court are the "Request of the Town of Whitman for Payment of Administrative Expense Pursuant to 11 U.S.C. [§] 503(b)(1)(A)" (the "Request") filed by the Town of Whitman (the "Town"), the "Debtor's Objection to Application of Administrative Expenses" (the "Objection") filed by David R. Nichols (the "Debtor"), and the "Application of Murphy, Lamere, & Murphy, P.C. for Allowance and Payment of Compensation for Services Rendered and For Reimbursement of Expenses Incurred as Counsel to the Town of Whitman as set forth in the [Request]" (the "Fee Application") filed by Murphy, Lamere & Murphy ("LM&M"), counsel to the Town in this case.  Through its pleadings, the Town seeks a determination that demolition costs it incurred removing an unsafe structure from the Debtor's property are an administrative expense under 11 U.S.C. § 503(b)(1)(A).  For the reasons set forth below, I will grant the Request in part and approve the Fee Application in part, finding that the Town is entitled to an administrative expense claim in the amount of $14,046.

**II. BACKGROUND**

      The facts relevant to the present matter are few and undisputed.  The Debtor filed his Chapter 13 petition on March 3, 2010.  The Debtor resides at 655 Washington Street in

1

Whitman, Massachusetts (the "Property"). In addition to a multi-family residence, the Property also contained an unoccupied barn (the "Barn") that was detached from the primary residence and abutting a public way (the "Barn"). The Debtor also kept an inoperable camper at the Property adjacent to the Barn.

By notices dated February 9, 2010, and May 20, 2010, the Town informed the Debtor that the Barn had been declared unsafe by the building commissioner and ordered him to either repair or remove it. Though he received the notice, the Debtor neither appealed the building commissioner's determination nor took any action to repair or remove the Barn. Upon completion of a survey of the structure, the Town sent the Debtor a third notice on May 26, 2010, requiring removal of the Barn. By an undated correspondence received in either June or July of 2010, the Debtor acknowledged receipt of the notices. Thereafter, the Town undertook the necessary actions to secure public funds and arrange for a contractor to remove the Barn.

On October 27, 2010, the Town filed an "Emergency Motion for Leave to Remove Unsafe Building From Property Located at 655 Washington Street, Whitman, MA and Leave to Recover Petitioner's Costs for Removal" (the "Emergency Motion"). In the Emergency Motion, the Town explained that the Barn had recently demonstrated an immediate risk of collapse and, given its proximity to the multi-family residence and the public way, threatened both the Property inhabitants and the nearby pedestrian and automobile traffic. Accordingly, the Town sought an order authorizing its agents to enter the Property to immediately remove the Barn, as well as any impediments to the proposed demolition, including the inoperable camper. The Town also requested permission to assess and collect the reasonable costs of demolition against the Debtor pursuant to its authority under Mass. Gen. Laws ch. 143, § 9.

2

I conducted a hearing on the Emergency Motion on October 28, 2010. The Debtor did not file an objection and during oral argument, counsel for the Town represented that the Debtor had, in prior discussions, consented to the removal of the Barn. At the conclusion of the hearing, I granted the Town relief from stay to remove the Barn, but deferred to make any ruling regarding costs until the Town filed a proof of claim.

On December 10, 2010, the Town filed the Request seeking administrative expense treatment under 11 U.S.C. § 503(b)(1)(A) for costs in the amount of $15,068 incurred demolishing the Barn (the "Demolition Costs"). According to the affidavit and invoices attached to the Request, the Town incurred the following expenses: labor and supplies in the amount of $500 for the removal of a water meter and seventeen tires, the patching of a water line, and backfilling done at the Property; compensation in the amount of $480 for police details; towing expenses in the amount of $500 payable to C&M Towing for the removal of the camper; costs for demolition, debris removal, and general lot grading payable to Hercules Building Wrecking Company in the amount of $9,500; and legal fees payable to LM&M in the amount of $4,088. Notably, the only expense not substantiated by any documentation was LM&M's legal fees. The Town asserted that the Demolition Costs qualified as administrative expenses because they reflected the actual and necessary costs of preserving the bankruptcy estate.

On December 14, 2010, the Debtor filed the Objection, which consisted of a single sentence stating that the Debtor lacked sufficient funds to pay an administrative expense through his Chapter 13 plan. I heard the matter on March 3, 2011,[1] at which time the Debtor argued that the Demolition Costs are not an administrative expense because, pursuant to Mass. Gen. Laws ch. 143, § 9, such costs are to be added to the real estate tax bill after two years and therefore, are

---

[1] A hearing on the Request was delayed by the temporary dismissal of the Debtor's case for failure to make payments pursuant to his Chapter 13 plan.

3

not presently collectable. With the consent of the Debtor, I authorized the Town to record a lien on the Property for the Demolition Costs, but took the issue of whether they qualified as an administrative expense under advisement. On March 23, 2011, I ordered the Town to file a fee application to support LM&M's request for legal fees. On April 6, 2011, the Town filed the Fee Application.

### III. DISCUSSION

Pursuant to Mass. Gen. Laws ch. 143, § 9, where a local building inspector makes a determination that a structure is dangerous and the owner refuses or neglects to correct the situation, "the local inspector shall cause it to be made safe and taken down."[2] Additionally,

> The costs and charges incurred shall constitute a debt due the city or town upon completion of the work and the rendering of an account therefor to the owner of such structure, and *shall be enforced in an action of contract*, and such owner . . . shall, for every day's continuance of such refusal or neglect after being so notified, be punished by a fine of not less than one hundred dollars. The provisions of the second paragraph of section three A of chapter one hundred and thirty-nine, relative to liens for such debt and the collection of claims for such debt, shall apply to any debt referred to in this section.[3]

Generally speaking, Mass. Gen. Laws ch. 139, § 3A provides that demolition expenses shall, if a notice is properly recorded within 90 days, constitute a lien on the property which will continue for two years, accruing interest at 6% per annum.[4] If the debt remains unpaid at the end of the two years, the debt will be certified to the tax assessors, who will then add it to the real estate tax bill.[5]

---

[2] Mass. Gen. Laws ch. 143, § 9.

[3] *Id.* (emphasis added). Notably, the statute was amended in 1992 to substitute "debt due the city or town upon completion of the work and the rendering of an account therefor to the owner of such structure," for "lien upon the land upon which the structure is located." St. 1992, c. 133, § 499. Although the Debtor relies on the prior language of the statute, the difference would not change the result in this case.

[4] Mass. Gen. Laws ch. 139, § 3A.

[5] *Id.*

Contrary to the Debtor's assertion, both of these statutes indicate that the Demolition Costs are presently collectable "in an action of contract."[6] Indeed, this is further supported by the fact that the Demolition Costs are accruing statutory interest at a rate of 6% per annum, which would be wholly illogical if they were not currently recoverable.[7] While the statute contemplates circumstances where the debt remains outstanding for over two years, it neither forces the Town to wait nor grants the Debtor the right to defer payment. Instead, it merely provides the Town an alternative mechanism to collect these types of expenses without having to sue the property owner.

Section 503(b)(1)(A) of the Bankruptcy Code provides that "there shall be allowed administrative expenses . . . including—the actual, necessary costs and expenses of preserving the estate . . . ."[8] From the outset, I note that the Debtor's inability to pay the Demolition Costs as an administrative expense is irrelevant to the question of whether they qualify as such. Fundamentally, priorities are narrowly construed statutory exceptions to the general rule of equal and ratable distribution in bankruptcy.[9] Accordingly, a debtor's ability to pay simply has no impact on whether a claim is afforded such treatment under the statute.

In several respects, the request for Demolition Costs associated with the removal of the Barn is analogous to cases addressing requests for administrative expense priority for necessary environmental cleanup costs provided to a contaminated estate. In *Midlantic Bank v. New Jersey*

---

[6] Mass. Gen. Laws ch. 139, § 3A (a claim for the expense of such demolition or removal . . . *shall be recoverable from such owner in an action of contract*) (emphasis added); Mass. Gen. Laws ch. 143, § 9 (The costs and charges incurred . . . *shall be enforced in an action of contract*) (emphasis added).

[7] *See* Mass Gen. Laws ch. 139, § 3A.

[8] 11 U.S.C. § 503(b)(1)(A).

[9] *See, e.g., Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008); *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651 (2006).

*Dept. of Environmental Protection*, the Supreme Court of the United States, quoting a prior decision, stated:

> Finally, we do not question that anyone in possession of the site-whether it is [the debtor] or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy trustee- must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.[10]

While Mass. Gen. Laws ch. 143, § 9 is not an environmental statute, it nonetheless demands the abatement of a public nuisance that threatens the safety and welfare of the general populace. Given the Supreme Court's directive, the Debtor, who as a Chapter 13 debtor remained in control of the Property, was not relieved of his obligation to remove the unsafe structure. As such, the Demolition Costs, for which there can be no argument that they are anything but a post-petition claim, were necessarily expended for the preservation of the bankruptcy estate.[11] Indeed, the demolition of the Barn substantially benefited the estate as it eliminated a threat to the multi-family residence also located at the Property, reduced the potential for liability claims against the estate, and likely increased the value of the Property. Therefore, the Demolition Costs are administrative expenses under 11 U.S.C. § 503(b)(1)(A).

The final issue before me is whether the Demolition Costs are reasonable and I find that, with the exception of LM&M's legal fees, they are. At the March 3, 2011 hearing, I noted my

---

[10] *Midlantic Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 502 (1986) (*quoting Ohio v. Kovacs*, 469 U.S. 274, 285 (1985)) (emphasis removed).

[11] *See, e.g., In re Caslin*, 97 B.R. 366, 369 (Bankr. S.D. Ohio 1989) (city's claim for demolishing a building to abate a nuisance was an administrative expense); *In re Vermont Real Estate Inv. Trust*, 25 B.R. 804, 806 (Bankr. D. Vt. 1982) (city entitled to an administrative expense claim for costs incurred demolishing the remainder of a collapsed building). *But see Gray v. City of Decatur (In re Gray)*, 394 B.R. 900, 905 (Bankr. C.D. Ill. 2008) (claim for demolition expenses will be determined to be pre-petition or post-petition claims depending on when the city became involved by either performing inspections or sending the debtor notices); *City of Clarksburg v. Sprouse (In re Sprouse)*, No. 07-120, 2008 WL 1767727 *3 (Bankr. N.D. W.Va. 2008) (city's claim for demolition costs arose prepetition when it sent the debtor a notice of condemnation).

concern that the legal fees appeared high considering the relative simplicity of the matter involved. Having carefully reviewed the time entries attached to the Fee Application, I conclude that my prior concerns were well-founded and that LM&M's billings are excessive.

As I have previously stated:

> A deficient fee application is filed at the applicant's peril. "Reduction of compensation is appropriate where time records inadequately describe services, provide insufficient detail, or are incomprehensible. The subject matter or purpose of meetings, letters, telephone conferences, and office conferences must be set forth." Failure to do so may result in denial or reduction of compensation for the task, as the Court cannot find services reasonable and necessary without disclosure of the need and purpose of the task.[12]

Moreover, "[i]f the time expended appears duplicative, excessive, or otherwise unnecessary, it will be appropriately reduced."[13] "The Court need not 'track down every entry, correlate them against the other fees applications, and . . . delete those entries insufficiently substantiated,' but may use its discretion to determine that a percentage of the fee application is overstated."[14]

The time entries attached to the Fee Application contain several large blocks of time where various tasks such as research, drafting, and telephone conferences are all lumped together making it difficult to gauge how counsel's time was spent. Nonetheless, it appears that LM&M spent approximately 12 hours researching and drafting the Emergency Motion, even though it was only four pages long and contained only three statutory citations. Additionally, on October 28, 2010, LM&M spent 3.30 hours preparing for and attending the hearing on the Emergency Motion. Given that the Emergency Motion was uncontested and the October 28, 2010 hearing lasted approximately 6 minutes, the 3.30 hours billed is grossly excessive. Because the

---

[12] *In re McMullen*, No. 00-10151-WCH, 2009 WL 530296 *28 (Bankr. D. Mass. Feb. 18, 2009) (*quoting In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740, 743 (Bankr. D. Mass. 1993)) (footnotes omitted).

[13] *Id.* at *26 (*citing Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).

[14] *Id.* at *27 (*quoting In re Bank of New England Corp.*, 142 B.R. 584, 586 (D. Mass. 1992)).

"lumping" involved precludes any meaningful attempt to strike unreasonable time entries, I will instead reduce the Fee Application by 25%, or $1,022.

In sum, I find that the Town has an administrative expense claim in the amount of $14,046 for the Demolition Costs.

## IV. **CONCLUSION**

In light of the foregoing, I will enter an order granting the Request in part and approving the Fee Application in part, finding that the Town is entitled to an administrative expense in the amount of $14,046.

                                                                */s/ William C. Hillman*

                                                       William C. Hillman
                                                       United States Bankruptcy Judge

Dated: June 7, 2011